IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **GARY ESTVANKO,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Civil Action No.** |
| v. : | **5:09-CV- 137(CAR)** |
| : | |
| **CITY OF PERRY, et. al.** : | |
| : | |
| **Defendant.** : | |
| : | |

## ORDER ON PRETRIAL BRIEFS

The present case is before the Court following a pretrial hearing. The case arises out of Defendant City of Perry's refusal to allow Plaintiff Gary Estvanko to use his property as a home for foster children. The City asserts that Plaintiff's property is not zoned for Plaintiff's intended use, as the property is currently zoned as an "R1 residential district," which allows only single family residences. Plaintiff contends that the City's refusal to allow him to use his property as a home for as many as twenty-four unrelated foster children violates the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq., because it discriminates against the children on the basis of their "familial status."

In his Complaint, Plaintiff relies on three provisions of the FHA, 42 U.S.C. § 3604 (a)-(c), which provide that it is unlawful

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, *familial status, or* national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, *familial status*, or national origin.
>
> (c) To make, print, or publish, or cause to be made, printed, or published any notice,

statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, *familial status*, or national origin, or an intention to make any such preference, limitation, or discrimination.

Id. (emphasis added). These provisions have been interpreted to prohibit the enforcement of zoning ordinances in a manner that denies a protected class equal access to housing. See City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 732,115 S.Ct. 1776, 1782 (1995); Hallmark Developers, Inc. v. Fulton County, 466 F.3d 1276, 1283 (11th Cir. 2006); Fair Housing in Huntington Comm. Inc. v. Town of Huntington, N.Y., 316 F.3d 357, 366 (2nd Cir. 2003) ("Conduct prohibited by [§ 3604(a)] includes discriminatory zoning practices.").

Plaintiff's claims fall solely within these provisions of the FHA. He did not plead or otherwise assert any constitutional challenges or claims. There is no dispute whether Plaintiff has standing to bring this suit, see Housing Investors, Inc. v. City of Clanton, Ala., 68 F. Supp. 2d 1287, 1294 (M.D. Ala. 1999) (finding that developer who expended funds on proposed housing complex had standing to raise claims under the FHA), or whether the City's occupancy restriction is subject to the FHA provisions, see City of Edmonds, 514 U.S. at 735 (holding that a zoning code provision describing who may compose a "family" is not a maximum occupancy restriction exempt from the FHA under 42 U.S.C. § 3607(b)(1)). Likewise, the parties have not raised any dispute as to whether the children in this case or the group foster home Plaintiff intends to create qualify for "familial status" protection under the FHA.[1] See 42 U.S.C. §3602(k).

---

[1] In Keys Youth Svcs, Inc. v. City of Olathe, KS, 248 F.3d 1267, 1271 (10th Cir. 2001), the U.S. Court of Appeals for the Tenth Circuit held that a group home did not qualify for "familial status" protection under the FHA because no parent, legal custodian, or other designee would be "domiciled" at the home with the children. This Court looked briefly at the issue. Plaintiff testified on deposition that two individuals would move into the home with the intent of being "residential house parents," which may qualify the children for "familial status" protection under the FHA. (Estvanko Depo. at 32). However, this evidence is contradicted by Mike Beecham's testimony that he believed no adults would be "living there" and that only a rotating, paid staff would be caring for the children. (Beecham Depo. at 31). Given the posture of the case and the nature of the briefs currently

Discovery is complete in this case, and no motions for summary judgment were filed within the appropriate time period. Thus, on July 17, 2010, the Court held a pretrial conference. During the conference, the Court attempted to identify the issues for trial and to ensure that the issues were appropriate for jury determination. After some discussion, the Court concluded that there were no claims against any individual defendants and thus qualified, legislative, and official immunity were no longer issues in the case. The City of Perry is the only remaining defendant, and the Court found that punitive damages could not be properly awarded against the City. The Court questioned Plaintiff's counsel about how he intended to prove discrimination and compensatory damages against the City, but counsel was unable to provide a clear answer. Counsel for Plaintiff then conceded that the case may require no more than a determination of whether there is "a problem with the way the [zoning] ordinance is written." The Court stated that the ordinance appeared to be facially neutral and accordingly suggested that the issue could be decided by the Court on briefs. The parties agreed that, if the Court was to find that the ordinance was unlawful as written, the case could be over. Both parties were directed to file briefs with the understanding that the Court may decide the case on this issue.

Plaintiff filed a timely brief but addressed more than the single issue identified by the Court. In his brief, Plaintiff argues that both the zoning ordinance and the City's zoning decisions were discriminatory and that the City of Perry discriminates against "foster children housed in group homes" because of their "familial status" in violation of the FHA. Plaintiff asserts not only that the ordinance is unlawful on its face, but also that the ordinance has a discriminatory effect on foster children living in group homes and that the City intentionally discriminated against the children in this case on the

---

before the Court, it is unclear whether there is a factual dispute here. Because of this and because the Court is not yet convinced that the Eleventh Circuit Court of Appeals would adopt the Second Circuit's reasoning on this issue, the Court chooses not to raise it *sua sponte*.

3

basis of their "familial status" when zoning decisions were made.  Plaintiff also contends that the City violated the FHA by failing to provide "reasonable accommodations," under 42 U.S.C.A. § 3604(f)(3)(B), which would have allowed the twenty-four unrelated foster children to live in his home. Each of Plaintiff's assertions represent a separate claim for violation of the FHA.  See Bonasera v. City of Norcross, 342 Fed. Appx. 581, 585 (11th Cir. 2009) (unpublished).  The City denies that the zoning ordinance has a discriminatory effect or that it intentionally discriminated against the children in this case.  The City further argues that Plaintiff cannot pursue a claim for failure to provide reasonable accommodation because he did not exhaust his administrative remedies before filing suit.

As an initial matter, the Court finds that Plaintiff does not have a valid claim for refusal to make reasonable accommodations, his last claim.  The FHA does not seem to require that "reasonable accommodations" be made for an individual's "familial status" as suggested by Plaintiff.  A plain reading of the statute reveals that "reasonable accommodations" are only required under sub-part (f) of §3604, which deals solely with discrimination on the basis of a handicap.  Inasmuch, the provision requires "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford *handicapped* persons equal opportunity to use and enjoy a dwelling."  City of Edmonds, 514 U.S. at 729 (emphasis added); 42 U.S.C.A. § 3604(f)(3)(B). Plaintiff cites no case law extending or even applying the provision to "familial status" in absence of a handicap; and this Court, on its own initiative, could not locate any.  Therefore, the Court need not address the exhaustion objections raised by the City in response to this claim and instead finds that, as a matter of law, Plaintiff cannot state a claim under §3604(f)(3)(B) for the City's alleged refusal to provide "reasonable accommodations" for the children's "familial status."  The claim is accordingly **DISMISSED** on this ground *sua sponte*.  Because Plaintiff did not have notice that the Court was considering this legal issue, however, Plaintiff may file a timely motion for reconsideration, which the

4

Court will review *de novo*.

The Court now turns to Plaintiff's remaining claims. Plaintiff's first claim is a facial attack of the City's definition of a "family." As discussed above, during the pretrial hearing, Plaintiff asserted that the zoning ordinance, as written, violates the FHA because it discriminates against foster children living in group homes on the basis of their "familial status." At that time, this Court stated that the City's ordinance appeared to be facially neutral but agreed to consider the claim further. The parties likewise agreed this was a matter of law for the Court to decide on the briefs.

Clearly, "an ordinance that uses discriminatory classifications is unlawful in all but rare circumstances," and a violation of the FHA can be established by demonstrating that an ordinance is discriminatory on its face and serves no legitimate government interest. Marriott Senior Living Svcs., Inc. v. Springfield Tp., 78 F. Supp.2d 376, 388 (E.D. Pa. 1999). When a facial challenge is made, the motive of the drafters of the ordinance is irrelevant. Id. The Court must only focus on "the explicit terms of the ordinance." Id. "To establish that an ordinance is facially invalid, a plaintiff must show that the accused ordinance treats someone protected by the FHA in a different manner than others are treated." Id. In other words, an ordinance facially discriminates against a protected group only "where it singles them out and applies different rules to them." Jeffrey O. v. City of Boca Raton, 511 F.Supp.2d 1339, 1349 (S.D. Fla. 2007).

Here, Plaintiff's property is zoned in an "R1 residential district," which, under the zoning ordinance, allows only single family residences: "building[s] designed for or occupied exclusively by one (1) family." (Pl. Brief, Ex. A). The ordinance defines a "family" as

> [o]ne (1) or more persons occupying a single dwelling unit, provided that, unless all members are related by blood, marriage or adoption, no such families shall contain over three (3) persons, in addition, a related family may have up to two (2) unrelated individuals living with them[.] The term family does not include any organization or institutional group.

(Id.) It is this definition of "family" that Plaintiff challenges as being unlawful under the FHA. Plaintiff points out that, under the ordinance, twenty-four children related by blood, marriage, or adoption could live in a single dwelling in an R1 residential district, but four foster children could not. While this may be true, it does not make the ordinance unlawful on its face.

There is no plain reference to foster children in the ordinance. Inasmuch, all unrelated people are treated similarly. Foster children living in group homes are not treated differently under the ordinance than any other unrelated individuals living in a group setting. Unrelated friends, students, or roommates living in groups of four or more are treated the same; as are groups of special needs children, handicapped adults, recovering alcoholics, battered women, or senior citizens living in a group home setting. Likewise, "foster children" in general, regardless of whether they live in a group home or traditional family setting, are not treated any differently under the ordinance than other unrelated children. All unrelated minors that may be living in a single family dwelling – friends, exchange students, or tenants – receive the same treatment under the ordinance's definition of family. Accordingly, the Court finds that, as a matter of law, the zoning ordinance's definition of family is facially neutral and does not violate the FHA by its express terms. Accord, Jeffrey O., 511 F.Supp.2d at 1365 (finding city's definition of family to be facially neutral because the definition treated all individuals alike, handicapped and non-handicapped, provided they are unrelated). Judgment is thus **GRANTED** for the City as to Plaintiff's claim that the ordinance is discriminatory on its face.

However, this finding does not dispose of the case. As noted above, Plaintiff has now articulated the theories by which he will attempt to prove discrimination under the FHA. Plaintiff claims (1) that the ordinance has a discriminatory effect on foster children living in group homes and (2) that the City intentionally discriminated against the children in this case on the basis of their "familial status." Plaintiff can state a claim for violation of the FHA under either theory, even if the

zoning ordinance is not discriminatory on its face. See generally Hallmark Dev., 466 F.3d at 1284-86.

In the briefs currently before Court, both parties addressed the merits of the two remaining claims. Because these issues have been briefed and because this case is not set to be tried before the February 2011 trial term, the Court will consider the issues for summary judgment. Doing so will not delay the trial of the case. However, precedent requires that the Court provide the parties with notice that the claims will be considered for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties may certainly choose to stand on the briefs currently before the Court or file new briefs and evidence to be considered. In the event that the parties decide to file new briefs or evidence, they should be mindful of the relevant legal paradigms which will be used by the Court in deciding whether there is sufficient evidence to present these issues to a jury.

1. Discriminatory effect theory.

First, Plaintiff intends to prove a discrimination claim under the theory that enforcement of the City's zoning ordinance has an unlawful discriminatory effect (or disparate impact) on foster children living in group homes. The FHA does provide relief from the application of a facially neutral ordinance that has a discriminatory effect on a group protected by the FHA. Regional Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown, 294 F.3d 35, 52 (2d Cir.2002). When proceeding under this theory, no evidence of discriminatory intent is required; a plaintiff must only provide evidence of the discriminatory effect. Reese v. Miami-Dade County, 242 F.Supp.2d 1292, 1301 (S.D. Fla. 2002) (citing Elliott v. City of Athens, 960 F.2d 975, 984 (11th Cir.1992)). A majority of courts use a burden shifting analysis, similar to the one used in employment discrimination cases, to determine whether enforcement of a facially neutral ordinance violates the FHA.[2] See e.g.,

---

[2] Although the United States Court of Appeals for the Eleventh Circuit has not expressly addressed the issue of whether a burden shifting analysis should be employed in deciding disparate impact claims under the

Gallagher v. Magner, 619 F.3d 823, 833 (8th Cir. 2010). This Court will likewise use a burden-shifting analysis.

To state a prima facie case under a discriminatory effect theory, a plaintiff must provide evidence that enforcement of the ordinance has a disproportionate or disparate impact on a protected group. Jeffrey O., 511 F.Supp.2d at 1365; RECAP, 294 F.3d at 52-53. Disparate impact is proven by demonstrating either that the ordinance or decision has "a segregative effect" on the protected group or that "it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." Hallmark Dev., 466 F.3d at 1286. "Typically, a disparate impact is demonstrated by statistics," id., and the plaintiff is "not required to show that the policy or practice was formulated with discriminatory intent." Huntington Branch, 844 F.2d at 934-35. Once the plaintiff demonstrates a disparate impact, the burden shifts to the defendant to "prove that its [practice of enforcing the challenged zoning ordinance] furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect.'" Graoch Assocs. # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n, 508 F.3d 366, 383 (6th Cir. 2007) (citing Huntington Branch, 844 F.2d at 936); see also, Lapid-Laurel, 284 F.3d at 466-67. Stated another way, the City must "demonstrate that its policy or practice ha[s] a 'manifest relationship' to a legitimate, non discriminatory policy objective and was necessary to the attainment of that objective." Gallagher, 619 F.3d at 834 (quoting Darst-Webbe Tenant Ass'n Bd. v. St. Louis

---

FHA, a majority of the federal circuits have adopted some form of either a two or three prong burden-shifting analysis. See Gallagher v. Magner, 619 F.3d 823, 833 (8th Cir. 2010); Ojo v. Farmers Group, Inc., 600 F.3d 1201, 1203, (9th Cir. 2010); Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth., 417 F.3d 898, 901-02 (8th Cir. 2005); Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains, 284 F.3d 442, 466-67 (3rd Cir. 2002); Langlois v. Abington Hous. Auth., 207 F.3d 43, 51 (1st Cir. 2000); Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 934-35 (2nd Cir. 1988). District courts within the Eleventh Circuit have also applied a burden shifting analysis in disparate impact cases. See e.g., Jeffrey O., 511 F.Supp.2d at 1356; Reese v. Miami-Dade County, -- F. Supp. 2d --, 2009 WL 3762994 * 11 (S.D. Fla. 2009) (slip copy).

Hous. Auth., 417 F.3d 898, 902 (8th Cir. 2005)); Reese v. Miami-Dade County, -- F. Supp. 2d --, 2009 WL 3762994 * 11 (S.D. Fla. 2009) (slip copy). If the City shows that its actions were justified, the plaintiff may then attempt "to show 'a viable alternative means' was available to achieve the legitimate policy objective without discriminatory effects." See Gallagher, 619 F.3d at 834 ; Reese, 2009 WL 3762994 at *11.

2. Intentional discrimination theory.

In addition to his claim of discriminatory effect, Plaintiff also claims that the City, through its zoning practices and decisions (enforcement of the ordinance, refusal to re-zone or de-annex the property, and amendment of the ordinance to re-define a "personal care home" to include children), intentionally discriminated against foster children living in group homes. The familiar burden-shifting analysis established for employment discrimination cases is also used to analyze claims of intentional discrimination under the FHA. Bonasera, 342 Fed. Appx. at 584; RECAP, 294 F.3d at 52; Graoch, 508 F.3d at 371; Secretary, U.S. Dep't Hous. & Urban Dev. ex rel. Herron v. Blackwell, 908 F.2d 864, 870-71 (11th Cir.1990).

To prove intentional discrimination, "a plaintiff has the burden of showing that the [city] actually intended or [was] improperly motivated in [its] decision to discriminate against persons protected by the FHA." Bonasera, 342 Fed. Appx. at 584; Reese, 2009 WL 3762994 at *10; Reese v. Miami-Dade County, 242 F.Supp.2d 1292, 1301 (S.D. Fla. 2002). Thus, to establish a prima facie case of intentional discrimination under the FHA, the plaintiff "must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." RECAP, 294 F.3d at 49. A plaintiff may meet this burden by demonstrating that the "decision-making body acted for the sole purpose of effectuating the desires of private citizens, that [discriminatory] considerations were

9

a motivating factor behind those desires, and that members of the decision-making body were aware of the motivations of the private citizens." Hallmark Dev., 466 F.3d at 1284. The Eleventh Circuit has also recognized four factors that are instructive in determining whether discriminatory intent is present: "[1] discriminatory or segregative effect, [2] historical background, [3] the sequence of events leading up to the challenged actions, and [4] whether there were any departures from normal or substantive criteria." Id.

If the plaintiff is successful in demonstrating a prima facie case of intentional discrimination, the defendant must come forward with evidence of a legitimate, non-discriminatory reason for its actions. Housing Investors, 68 F. Supp. 2d at 1300. If the defendant is able to make this showing, the plaintiff is then required to identify some evidence demonstrating that defendant's proffered non-discriminatory reasons are merely pretext and that the intended inhabitant's protected status was in fact a motivating factor in the adverse decisions. Id. The plaintiff's evidence of discriminatory intent need not show that the protected status of the intended inhabitants was the sole or dominant factor for the zoning decision; he need only show "that it was a motivating factor." Id. at 1299.

Again, both Plaintiff's disciminatory effect and intentional discrimination claims under the FHA have been briefed to some extent. As such, new briefs in support or opposition of summary judgment are invited, but not required. If, in light of this Order, the City decides to file a statement of material facts, brief in support of summary judgment, or new evidence, it should file notice of an intent to do so within ten (10) days of the date of this Order and file such documents within thirty (30) days of the date of this Order. Plaintiff will have twenty-one (21) days to respond, and the City will have fourteen (14) days to file a reply. If the City chooses not to file a new brief in support of summary judgment, Plaintiff may still file his own supplemental brief and any new evidence within the allotted time period to which the City may respond.

Otherwise, for aforementioned reasons, Plaintiff's reasonable accommodation claim is **DISMISSED**, and judgment is **GRANTED** in favor of the City as to Plaintiff's claim that the zoning ordinance is discriminatory on its face. The remaining two claims will be considered for summary judgment. The pending Motions in Limine [Doc. 16 & 17], discussed but not completely decided during the pretrial conference, will not be considered further; they are hereby **DISMISSED** but may be re-filed if the remaining claims proceed to trial. Of course, however, any evidentiary objections may be raised if relevant on summary judgment.

**SO ORDERED** this 17th day of November, 2010

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT


jlr